IN THE UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF FLORIDA

JACKSONVILLE DIVISION

WILLIAM G. MERRYMAN,

      Plaintiff,

    v.

TOWN OF ORANGE PARK,
WILLIAM WHITSON,
RANDY ANDERSON,
WINNETTE SANDLIN,
GLEN TAYLOR,
DOUG BENEFIELD,
KEN VOGEL,
SMITH, GAMBRELL & RUSSELL, LLP,
LAWSIKIA HODGES, ESQ.,
YASH DAVE, ESQ.,
CONSTANGY, BROOKS, SMITH & PROPHETE, LLP,
COLIN THAKKAR, ESQ.,
MARGARET ZABIJAKA, ESQ.,
NEIL WASSER, ESQ.,
CARA CROTTY, ESQ.,
THE FLORIDA BAR,
ROLAND SANCHEZ-MEDINA JR. (official capacity only),
ROSALYN SIA BAKER-BARNES (official capacity only),
JOSHUA E. DOYLE (official capacity only),

      Defendants.

---

## I. INTRODUCTION

1.    This is a civil rights, employment, and tort action seeking to redress a coordinated series of retaliatory, discriminatory, and constitutionally violative acts against Plaintiff

William G. Merryman, a 100% VA-rated Disabled Veteran and former Human Resources Manager for the Town of Orange Park.

2.    Plaintiff's service-connected disability was significantly exacerbated by the Town's failure to accommodate, compounded by post-reporting retaliation coordinated by two outside law firms, their attorneys, and the Town's governing officials.

3.    After engaging in multiple forms of protected activity—including whistleblower disclosures, ADA accommodation requests, First Amendment speech on matters of public safety, and formal complaints of gender-based and retaliatory misconduct—Plaintiff became the target of a retaliatory campaign that culminated in wrongful termination on February 21, 2025, with continuing harm through June 2025.

4.    Central to this case is a fraudulent investigation purporting to be "independent," but in fact: **(a)** was authored by Constangy attorney Colin Thakkar; **(b)** Revised by defense counsel Lawsikia Hodges and Yash Dave of Smith, Gambrell & Russellm **(c)** Used to discredit whistleblower complaints; **(d)** Falsely marketed as neutral to Council, the public, and the record

5.    After Plaintiff's termination, municipal defense counsel, and affiliated attorneys chose delay, silence, and procedural deflection despite having received a formal Notice of Irreparable Injury and clear advisory that documentation of ADA violations, retaliation, and reputational harm exists within the Town's records, obtained by Plaintiff through public records requests.

6.    The Florida Bar's refused to investigate the documented misconduct of its own members. In a letter signed by Bar Counsel Dian Suhm, the Bar cited Plaintiff's right to file civil litigation as justification for preemptively declining to review evidence of

attorney-facilitated retaliation. This act constituted a denial of Plaintiff's First Amendment right to petition, a chilling of whistleblower speech, and a due process failure under color of state law.

7.    Plaintiff brings distinct claims against all named Defendants under: **(a)** Title VII of the Civil Rights Act of 1964; (b) Americans with Disabilities Act (ADA); **(c)** 42 U.S.C. § 1983 (First Amendment Retaliation, Due Process, and Equal Protection); **(d)** Rehabilitation Act; **(e)** State tort law including fraud, misrepresentation, and negligent supervision; **(f)** Constitutional and statutory violations committed by The Florida Bar acting under delegated state authority

8.    The Plaintiff further brings distinct claims against the Florida Bar and attorney Dian Suhm, not for their regulation of attorney conduct, but for their suppression of a valid government petition and First Amendment speech citing verifiable allegations of constitutional and professional misconduct despite: **(a)** Receiving sworn complaints with notice of documented exhibits; **(b)** Acknowledging the receipt of the complaint, and **(c)** Choosing to dismiss without inquiry by invoking inapplicable discretion.

9.    Plaintiff has exhausted all administrative remedies to the extent required and now turns to this Court for emergency injunctive relief, restoration of back and front pay, economic and non-economic damages, and declaratory judgment ensuring that no other employee, veteran, or whistleblower suffers similarly.

## II.    TABLE OF CONTENTS

I.    INTRODUCTION                                          1

II.    TABLE OF CONTENTS                                   3

III.    JURISDICTION & VENUE                               5

| IV. | GLOSSARY OF ABBREVIATIONS & KEY ACTORS | 6 |
|---|---|---|
| V. | DEFENDANT COUNT INDEX | 8 |
| VI. | STATEMENT OF FACTS | 10 |
| VII. | COMPREHENSIVE SET OF FACTS THAT SUPPORTS ALL COUNTS | 10 |
| VIII. | ADDITIONAL FACTS FOR FEDERAL CONSTITUTIONAL CLAIMS (COUNTS I–V) | 12 |
| | 1. Free-Speech / Petition Facts | 12 |
| | 2. Conspiracy / Joint-Action Facts | 13 |
| | 3. Municipal-Liability / Ratification Facts | 13 |
| IX. | ADDITIONAL FACTS FOR FEDERAL STATUTORY EMPLOYMENT CLAIMS (COUNTS VI–IX) | 14 |
| | 1. ADA Accommodation Timeline | 14 |
| | 2. Title VII Retaliation Facts | 16 |
| | 3. ADA Wrongful Disclosure | 16 |
| X. | ADDITIONAL FACTS FOR STATE CONSTITUTIONAL & STATUTORY CLAIMS (COUNT X) | 17 |
| XI. | ADDITIONAL FACTS FOR STATE COMMON-LAW TORT & CONTRACT CLAIMS (COUNTS XI–XVII) | 17 |
| | 1. Negligent Hiring / Retention | 17 |
| | 2. Breach-of-Contract Specifics | 17 |
| | 3. Intentional Infliction of Emotional Distress (IIED) | 18 |
| XII. | CLAIMS FOR RELIEF | 18 |
| FEDERAL CONSTITUTIONAL CLAIMS (COUNTS I – V) | | 18 |
| COUNT I – FIRST AMENDMENT RETALIATION *(42 U.S.C. § 1983 – Free-Speech / Petition Clause)* | | 18 |
| COUNT II – DENIAL OF RIGHT TO PETITION FOR REDRESS | | 21 |
| COUNT III – CONSPIRACY / JOINT ACTION TO DEPRIVE CIVIL RIGHTS | | 23 |
| COUNT IV – MUNICIPAL LIABILITY (Monell) | | 25 |
| COUNT V – POLICY/CUSTOM LIABILITY OF PRIVATE CORPORATE ACTORS | | 26 |
| FEDERAL STATUTORY EMPLOYMENT CLAIMS (COUNTS VI – X) | | 28 |
| COUNT VI – FAILURE TO PROVIDE REASONABLE ACCOMMODATION *(ADA Title I, 42 U.S.C. § 12112(b)(5)(A)-(B))* | | 28 |
| COUNT VII – ADA RETALIATION *(42 U.S.C. § 12203(a))* | | 30 |
| COUNT VIII – ADA INTERFERENCE / COERCION | | 32 |
| COUNT IX – RETALIATION (Title VII) *(42 U.S.C. § 2000e-3(a))* | | 34 |

COUNT X – ADA CONFIDENTIALITY VIOLATION *(42 U.S.C. § 12112(d)(3)-(4))*       35

STATE CONSTITUTIONAL & STATUTORY CLAIMS (XI & XII)       37

COUNT XI – DENIAL OF RIGHT TO PETITION *(FLA. CONST. art. I, § 5)*       37

COUNT XII – AIDING & ABETTING RETALIATION *(Florida Civil Rights Act, Fla. Stat. § 760.10(1) & (5))*       38

COMMON LAW (COUNTS XII – XVI)       40

COUNT XIII – NEGLIGENT HIRING, SUPERVISION, AND RETENTION       40

COUNT XIV – INVASION OF PRIVACY / BREACH OF CONFIDENTIALITY       42

COUNT XIV – CONSTRUCTIVE AND WRONGFUL DISCHARGE       44

COUNT XV – BREACH OF CONTRACT       46

COUNT XVI – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS       48

XIII.    SUMMARY OF RELIEF       50

XIV.    CONCLUSION       52

## III.    JURISDICTION & VENUE

10.    **Federal-question jurisdiction.** This action arises under the Constitution and laws of the United States—including 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), and the Rehabilitation Act—so this Court has original jurisdiction under 28 U.S.C. § 1331.

11.    **Civil-rights jurisdiction.** Because Plaintiff seeks redress for the deprivation of rights secured by federal law by persons acting under color of state authority, jurisdiction also lies under 28 U.S.C. § 1343(a)(3)–(4).

12.    **Supplemental jurisdiction.** The state-law claims are so related to the federal claims that they form part of the same case or controversy; therefore, this Court may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

13.     **Declaratory and injunctive authority.** The Court is empowered to grant declaratory and prospective injunctive relief under 28 U.S.C. §§ 2201–2202 and Fed. R. Civ. P. 57 and 65.

14.     **Venue—statutory basis.** Venue is proper in the Jacksonville Division of the Middle District of Florida under 28 U.S.C. § 1391(b)(1)–(2) because (a) at least one Defendant resides in this District and Division, and (b) a substantial part of the events or omissions giving rise to the claims occurred within Clay County, Florida, which lies in this Division.

15.     **Venue—convenience and justice.** The vast majority of parties, witnesses, and relevant documents are located within—or within easy reach of—the Jacksonville Division, making this forum the most convenient and just location for adjudication.

# IV.   GLOSSARY OF ABBREVIATIONS & KEY ACTORS

**Abbreviation / Term Meaning**

| | |
|---|---|
| **ADA** | Americans with Disabilities Act of 1990 |
| **ADA Timeline** | Paragraphs 19–24 of the Statement of Facts summarizing Plaintiff's accommodation requests and related events |
| **Anderson, Randy** | Mayor of the Town of Orange Park (individual defendant) |
| **Bean, Daniel** | Litigation partner, Smith, Gambrell & Russell, LLP (SGR) |

| Abbreviation / Term | Meaning |
|---|---|
| **Council / Councilmembers** | Elected legislative body of the Town of Orange Park; specifically Winnette Sandlin (Vice-Mayor), Glen Taylor, Doug Benefield, Kenneth Vogel |
| **Constangy** | Constangy, Brooks, Smith & Prophete, LLP—outside labor counsel for the Town |
| **Crotty, Cara** | Voting partner, Constangy (individual defendant) |
| **Dave, Yash** | Employment-law partner, SGR (individual defendant) |
| **EEOC** | U.S. Equal Employment Opportunity Commission |
| **FCRA** | Florida Civil Rights Act (Fla. Stat. § 760.01 et seq.) |
| **Florida Bar** | State-authorized regulatory body for attorneys; defendant in Counts II & XI |
| **Hodges, Lawsikia** | Town Attorney and SGR partner (individual defendant) |
| **HR** | Human Resources |
| **IIED** | Intentional Infliction of Emotional Distress (Count XVI) |
| **Monell** | U.S. Supreme Court case establishing municipal liability under § 1983; shorthand for Count IV claim |
| **P&T** | Permanent and Total disability rating assigned by the U.S. Department of Veterans Affairs |
| **Praprotnik** | *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988)—ratification precedent cited in Count IV |

**Abbreviation / Term Meaning**

| | |
|---|---|
| **SGR** | Smith, Gambrell & Russell, LLP—outside labor counsel for the Town |
| **Suders / Green Standard** | Constructive-discharge test from *Pa. State Police v. Suders* and *Green v. Brennan* |
| **Thakkar, Colin** | Attorney, Constangy, primary drafter of Investigation Results Memo |
| **TM PD** | Town-Manager Position Description (contract term cited in Count XVI) |
| **Town** | Town of Orange Park, municipal defendant |
| **Whitson, William** | Interim Town Manager (individual defendant) |
| **Zabijaka, Margaret** | Attorney and partner, Constangy (individual defendant) |
| **§ 1983** | 42 U.S.C. § 1983—federal civil-rights statute underlying Counts I–V |

## V.   DEFENDANT COUNT INDEX

DEFENDANT – COUNT INDEX

| Employer / Group | Individual Defendants | Counts Named In |
|---|---|---|
| Town of Orange Park Corporate | | I, III, IV, VI, VII, VIII, IX, X, XIII, XIV, XV, XVI, XVII |
| | William Whitson | I, III, VII, VIII, IX, XV, XVII |
| | Randy Anderson | I, XIII, XVII |

| | |
|---|---|
| Winnette Sandlin | IX, XIII, XVII |
| Glenn Taylor | I, XIII, XVII |
| Doug Benefield | XIII, XVII |
| Kenneth Vogel | XIII, XVII |
| Smith Gambrell & Russell ("SGR") | III, V, VII, VIII, IX, XII, XVII |
| Lawsikia Hodges | III, VII, VIII, IX, XVII |
| Yash Dave | III, V, VII, VIII, IX, XII, XVII |
| Daniel Bean | VIII, XII |
| Constangy Brooks Smith & Prophete | III, V, VII, VIII, IX, XII, XVII |
| Colin Thakkar | III, V, VII, VIII, IX, XII, XVII |
| Margaret Zabijaka | III, V, VII, VIII, IX, XII, XVII |
| Neil Wasser | V |
| Cara Crotty | V |
| Florida Bar | II, XI |
| Roland Sanchez-Medina Jr. | II, XI |
| Rosalyn Sia Baker-Barnes | II, XI |
| Joshua E. Doyle | II, XI |
| Dian Suhm | II, XI |

## VI.    STATEMENT OF FACTS

## VII.    COMPREHENSIVE SET OF FACTS THAT SUPPORTS ALL COUNTS

16.    Plaintiff & Role – William G. Merryman is a 100 % VA-rated disabled veteran hired as the Town of Orange Park's first professional Human Resources Manager to, in part,  evaluate current procedures and make recommendations to streamline them, keeping in mind legal standards and best practices."

17.    The Position Description also states that "[i]nitial duties [were] to assist the Town Manager with personnel matters and provide support to the Town's six department heads for their HR needs."

18.    Systemic Concerns Raised – From January 2024 through February 2025 he formally warned Town leadership, including the Former Town Manager, Interim Town Manager, Town Counsel, and Councilmembers about wage compression and risks, ADA vulnerabilities, firefighter safety risks, and hostile-work-environment issues.

19.    Protected Activities – **(a)** attended September 2024 Public Safety Budget Committee Meeting and spoke on necessary changes to support Firefighter safety, including statistical and professional study supports; Mayor Randy Anderson responded, "Why is he here?" and "It's easy to just say we can get rid of HR." **(b)** December 2024 written Title VII complaint about Interim Manager Whitson's gender-based misuse of female staff. **(c)** January–February 2025 written ADA accommodation requests, ADA complaints, culminating in the formal Town form evidence of Plaintiff's intent to comply with Town demands for accommodation.

20.     Retaliatory Signals – In a February 2025 e-mail thread between Former Town Manager Sarah Campbell and Town Council, copying Town Attorney and Smith, Gambrell, and Russell, LLP ("SGR"), Plaintiff was labeled "adversarial" for bringing forth red flags cited in ¶5 and stating the Interim Town Manager selection process was marred by lack of transparency, established qualification standards, fairness, and accountability.

21.     Hiring of William Whitson Despite Red Flags – Council hired Whitson in an October 2024 without background or reference checks even though they were placed on direct notice that Whitson appeared to include false information in his application materials and was involuntarily terminated by a 4-1 vote from the City of Flagler Beach mismanagement and severe degradation of morale.

22.     Sham 'Independent' Investigation – In response to Plaintiff's "Notice of Alleged Misconduct and Recommendation for Investigation" and his own separate formal complaint, the Town Council contracted law firm Constangy, Brooks, Smith Prophete, LLP ("Constangy") to conduct an independent investigation. Constangy attorney Colin Thakkar ("Thakkar") drafted the investigation memo; SGR attorneys Lawsikia Hodges ("Hodges") and Yash Dave ("Dave") red-lined out ADA and whistleblower references; the final report issued on Constangy letterhead 3 February 2025.

23.     ADA Medical-Privacy Breach – On 19 February 2025 Whitson wrote "claims panic attack" on Plaintiff's payroll timesheet, visible to staff without need to know about medical information.

24.     Termination – On 21 February 2025 Whitson sent an e-mail terminating Plaintiff the day after Plaintiff advised Town Attorney Hodges of his scheduled intake meeting with EEOC and requesting support from Disability Rights Florida, and within hours of Whitson

receiving a Psychiatrist's note indicating Plaintiff's intent to comply with Town's demands for accomodation.

25.    Post-Termination Ratification – Despite a Settlement Demand Letter identifying ADA failure to accommodate, retaliation, and several more perceived violations on 4 March 2025, and Notice of Irreparable Injury served 7 March 2025, the Town Council, SGR, and Constangy took no corrective action; the Florida Bar likewise dismissed related complaints without inquiry.

26.    Damages – Plaintiff lost wages and benefits; his VA disability rating was increased to 100 % P&T effective 12 February 2025; and his family suffered utility shut-offs and credit exhaustion.

# VIII.    ADDITIONAL    FACTS    FOR    FEDERAL CONSTITUTIONAL CLAIMS (Counts I–V)

### 1.    Free-Speech / Petition Facts

27.    Plaintiff attended the Public Safety Budget Committee workshop as a private citizen, sat in the general audience area, and spoke only when the Fire Chief invited him to speak.

28.    Town Council Rule 4-05 permits public comment at such workshops, establishing Plaintiff's speech as protected civic participation rather than employee duty.

29.    On 14 February 2025 Plaintiff e-mailed the Town Council—copying Interim Town Manager Whitson—forwarding social-media posts in which residents echoed the staffing and safety concerns documented in the January 2025 Climate Survey; Plaintiff reminded

Whitson that he had provided Whitson a hard-copy summary of that survey on 10 January 2025 and had urged him to share it with Council.

30.    Later that same day, Whitson issued a written reprimand accusing Plaintiff of "unauthorized communication with Council" and warning, "I will not tolerate any further insubordination on this issue."

31.    On 20 February 2025 Whitson escalated the directive by serving a "Performance Issue – Unauthorized Communications" memorandum that barred Plaintiff from contacting Council "regarding personnel matters or Town operations" without Whitson's written approval and declared, "This is your final warning." Plaintiff was terminated the next day.

## 2. Conspiracy / Joint-Action Facts

32.    Documents obtained post termination indicate the 3 February 2025 draft investigation memo portrayed as being solely authored by "independent" investigator Thakkar contained SGR internal document codes and redline changes by Dave and Hodges that were adopted into the final document, indicating joint authorship with Town representation.

33.    Numerous documents obtained through public records requests demonstrate that Hodges and Dave, with direct knowledge of SGR litigation attorney Daniel Bean, authored or co-authored communications from the Former Town Manager and Whitson that resulted in retaliatory action, failure to accommodate, and efforts to conceal their own authorship of those communications from November 2024 through February 2025.

## 3. Municipal-Liability / Ratification Facts

34.    Under Charter § 2-07(b) the Council exercises final-policymaking authority; nevertheless, it ratified Whitson's actions by remaining silent, and failing to inquire further,

after the 4 March 2025 Settlement Demand Letter and 7 March 2025 Notice of Irreparable Injury provided them with direct knowledge of Whitson's retaliatory conduct and concrete harm against Plaintiff.

35.     Constangy Partner Maragaret Zabijaka, Chairman Neil Wasser, and voting partner Cara Crotty were directly notified of defects in the Investigation Results Memo, provided with Plaintiff's 60 page rebuttal against the results, and the harm their organization's memo has caused and continues to cause, yet took no apparent action to retract, repudiate, or other mitigate harm.

36.     SGR litigation partner Daniel Bean and employment and labor partner Yash Dave were and are directly involved in strategizing and participating in the Town's alleged misconduct, including Hodges' ghost-writing retaliatory communications for Town management's use and reliance, and took no action to mitigate harm or correct misconduct.

## IX.    ADDITIONAL FACTS FOR FEDERAL STATUTORY EMPLOYMENT CLAIMS (Counts VI–IX)

### 1.    ADA Accommodation Timeline

37.     7 January 2025 – Plaintiff e-mailed a written-communication accommodation request citing anxiety linked to a preexisting mental health condition and exacerbations caused by workplace stressors introduced following Whitson's hiring; Whitson stated personal opposition but agreed to the accommodation.

38.     10 January 2025 – Plaintiff provided employee survey data adverse to Whitson in his position. Whitson responded by directing Plaintiff to schedule time for a face-to-face meeting and demanded evidence of disability despite the existing accommodation detailed

in ¶20; Plaintiff responded with a formal request to engage in a structured interactive process.

39.      31 January 2025 – Absent of any response to the request detailed in ¶21, Plaintiff submitted a formal Request for Accommodation on Town letter head; although length, the requested accommodations were limited to modern and commonly accepted work place practices that demonstrate respect, encourage collaboration, and often result in elevated performance levels.

40.      12 and 14 February 2025 – Whitson issued written reprimands questioning Plaintiff's disability and warning of "insubordination," despite Plaintiff previously providing Whitson with his formal diagnosis from his medical provider, a report from the emergency room for an acute anxiety episode with dangerously elevated blood pressure, and direct notice that his workplace behaviors and demeanors are a catalyst for Plaintiff's disability.

41.      19 February 2025 – Plaintiff complained in writing that Whitson's public timesheet note, citing Plaintiff "Claims Panic Attack," violated ADA confidentiality.

42.      20 February 2025 – Plaintiff submitted a Formal Demand for Action letter to Hodges citing Whitson's failure to accommodate, retaliatory conduct, disclosure of medical information, scheduling of an EEOC intake meeting, and soliciting assistance from Disability Florida.

43.      21 February 2025 – Plaintiff provided a doctor's note from his Psychiatry appointment that morning. Hours later, Whitson emailed Plaintiff notifying him of his termination without cause.

### 2. Title VII Retaliation Facts

44.     Plaintiff's December 2024 complaint detailed Whitson's delegation of gender-sensitive personal tasks to female employees, including the rescheduling of his urology appointment.

45.     On or around December 16, 2024, Hodges and Dave met with Plaintiff to discuss the "Notice of Alleged Misconduct and Recommendation for Investigation." Following these meetings, Plaintiff detailed concerns in email to Hodges and Dave regarding his perception that the matter was being mishandled, including an interrogative style of interviewing, dismissal of Plaintiff's allegations and employee complaints, and several abnormalities Plaintiff has not previously observed in his experience as a Human Resources professional.

46.     Subsequently, Plaintiff submitted his own formal complaint of other acts against him personally, which was silenced by the Investigation Results Memo in ¶14 – 15.

47.     Councilmember Sandlin told employee Emily Dockery that Plaintiff was acting only because he "didn't get the Town Manager job," undermining his protected activity.

### 3. ADA Wrongful Disclosure

48.     Whitson appeared to store Plaintiff's ADA, FMLA, and medical records in a separate file from Plaintiff's regular personnel files, demonstrating knowledge of appropriate handling of sensitive information prior to handwriting his note "Claims Panic Attack" on Plaintiff's timesheet.

## X.    ADDITIONAL FACTS FOR STATE CONSTITUTIONAL & STATUTORY CLAIMS (Count X)

49.    On 15 April 2025 Plaintiff filed a sworn ethics complaint with the Florida Bar against Thakkar; Bar Counsel Dian Suhm dismissed it without investigation, citing the existence of pending litigation and without citation to established Bar procedures and authorities for dismissal.

50.    Bar leadership, including President Sanchez-Medina and Executive Director Joshua Doyle, received notice of Suhm's dismissal yet took no action to ensure proper administrative review.

## XI.    ADDITIONAL FACTS FOR STATE COMMON-LAW TORT & CONTRACT CLAIMS (Counts XI–XVII)

### 1.  Negligent Hiring / Retention

51.    Public minutes from the 8 September 2022 Flagler Beach City Commission meeting show William Whitson was terminated for cause by a 4-1 vote; a resident forwarded those minutes to the Orange Park Council on 9 October 2024, but the Council proceeded with hiring.

### 2.  Breach-of-Contract Specifics

52.    Plaintiff's position description, Employee Handbook § 3.2, and Town Charter require the HR Manager to enforce compliance with federal and state employment laws; Plaintiff was reprimanded on 12 February 2025 for following this mandate.

### 3. **Intentional Infliction of Emotional Distress (IIED)**

53.     Documents and witness statements portray Whitson's, Hodges', Dave's, Thakkar's, SGR's, Constangy's, and the Town's as engaging in concerted efforts to discredit Plaintiff as an HR professional, conceal alleged misconduct and harm to Town employees and vendors, refuse reasonable accommodation, and other adverse actions that Plaintiff claims, in a complaint to Hodges, reflect an environment facilitating constructive termination.

54.     Defendant actions came after direct notice that their conduct was exacerbating Plaintiff's disability which was initially obtained through his military service.

## XII.   CLAIMS FOR RELIEF

### FEDERAL CONSTITUTIONAL CLAIMS (COUNTS I – V)

**COUNT I – FIRST AMENDMENT RETALIATION** *(42 U.S.C. § 1983 – Free-Speech / Petition Clause)*

55.     **Defendants**: The defendants to this count are: **(a)** Town of Orange Park; **(b)** Randy Anderson, Mayor (individual capacity); **(c)** Glen Taylor, Councilmember (individual capacity); and **(d)** William Whitson, Interim Town Manager (individual capacities).

56.     **Statutory Authority:** 42 U.S.C. § 1983 provides a civil remedy against any person who, under color of state law, deprives another of rights secured by the Constitution.

57.     **Controlling Precedent**: *Garcetti v. Ceballos*, 547 U.S. 410 (2006); *Lane v. Franks*, 573 U.S. 228 (2014); *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968); *Moss v. City of Pembroke Pines*, 782 F.3d 613 (11th Cir. 2015); *Bryson v. City of Waycross*, 888 F.2d 1562 (11th Cir. 1989).

58.     Factual Allegations by Element

a.     Element 1 – Protected Speech on Matters of Public Concern: **(a) Public-meeting speech (Sept 2024):** Plaintiff, seated with citizens at a Public Safety Budget Workshop and off the clock, spoke—only when invited by the Fire Chief—about firefighter understaffing and mandatory-overtime risks. **(b) Citizen e-mail to Council (14 Feb 2025):** Plaintiff e-mailed the Mayor and Council forwarding residents' Facebook posts that mirrored the January 2025 Climate-Survey findings and reminded Whitson that he had received those survey results on 10 Jan 2025. The e-mail urged Council action on public-safety staffing and ADA-privacy concerns. **(c)** Both communications were delivered outside Plaintiff's ordinary HR duties and addressed public safety, government accountability, gross mismanagement, and/or potentially unlawful conduct—undeniably matters of public concern.

b.     Element 2 – Adverse Employment Actions: **(a)** Anderson publicly rebuked Plaintiff during the workshop, stating: "Why is he here?" and "It's easy to just say we can get rid of HR;" **(b)** Whitson issued a written reprimand on 14 Feb 2025 accusing Plaintiff of "unauthorized communication with Council" and warning of "insubordination;" **(c)** Whitson escalated on 20 Feb 2025 with a "Performance Issue – Unauthorized Communications" memorandum that barred any further contact with Council without his written approval and declared, "This is your final warning;" **(d)** Council/Whitson thereafter removed Plaintiff from advancement candidacy, relied on a manipulated investigation, and terminated him on 21 Feb 2025.

c.     Element 3 – Causal Nexus: Anderson's immediate rebuke, Taylor's documented disdain for Plaintiff's advocacy, and Whitson's two written directives expressly

targeting Plaintiff's 14 Feb citizen e-mail establish a direct retaliatory link between protected speech and the adverse actions.

d.      Element 4 – Speech Outside Ordinary Duties (Garcetti / Lane): Plaintiff was an hourly employee not on the clock at the workshop, and unscheduled citizen e-mails to Council about safety and ADA confidentiality are outside the routine scope of HR duties; therefore, the speech was made as a private citizen.

e.      Element 5 – Pickering Balancing: The speech warned of imminent public-safety hazards, misuse of public resources, and gross mismanagement affecting Town Hall personnel. The Town had no legitimate efficiency interest in suppressing truthful, data-supported, constructive speech intended to address items of public interest; the balance favors Plaintiff.

f.      Element 6 – Municipal Liability (Monell): The Town Council, the Town's final policymakers, tacitly ratified the retaliation by endorsing Whitson's disciplinary directives and taking no corrective action, binding the Town under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

59.      **Ultimate Violation Alleged**: Defendants retaliated against Plaintiff for citizen speech and petitioning activity on matters of public concern, violating the First Amendment.

60.      **Harm**: Reputational damage; chilling of future expression; aggravation of health conditions; and loss of promotional opportunity and income.

61.      **Relief Sought: (a)** Declaratory judgment that Defendants violated Plaintiff's First-Amendment rights; **(b)** Injunctive relief requiring First-Amendment training **(i)** for all current and future Town policymakers, counsel, and department heads, including employee

rights to engage and **(ii)** training for all employees upon hire and biannually on what lawfully constitutes protected speech as an employee and how to exercise their First Amendment rights when reporting matters of public interest; **(c)** Compensatory damages against the Town and all individual defendants named in this count; **(d)** Punitive damages against Anderson, Taylor, and Whitson for willful violation of clearly established constitutional rights.

**COUNT II – DENIAL OF RIGHT TO PETITION FOR REDRESS**[1] *(42 U.S.C. § 1983 – First-Amendment Petition Clause)*

62.    **Defendants: (a)** The Florida Bar; **(b)** Roland Sanchez-Medina Jr. (President, official capacity); **(c)** Rosalyn Sia Baker-Barnes (President-Elect, official capacity); **(d)** Joshua E. Doyle (Executive Director, official capacity).

63.    **Statutory and Constitutional Basis**: The First Amendment guarantees the right "to petition the Government for a redress of grievances." 42 U.S.C. § 1983 provides a civil remedy against state actors who abridge that right.

64.    **Controlling Precedent**: *BE & K Constr. Co. v. NLRB*, 536 U.S. 516 (2002); *California Motor Transp. v. Truck. Unlimited*, 404 U.S. 508 (1972); *Franz v. Lytle*, 997 F.2d 784 (10th Cir. 1993).

65.    **Factual Allegations by Element**:

   a.   Element 1 – Protected Petitioning Activity: On 15 April 2025 Plaintiff filed a sworn grievance with the Florida Bar detailing alleged attorney misconduct that infringed statutory and constitutional rights. See State-Statutory Facts ¶ 31-32.

---

1.

[1] The Plaintiff has previously submitted complaint to the Florida Bar against other attorneys. These complaints were met with similar fates: rejections based on reasonings outside Bar rules. Plaintiff exhausting additional reviews which consistently upheld rejections made outside discretionary boundaries. If the court is inclined to dismiss this count due to ripeness, Plaintiff requests a stay on this count until such time as administrative remedies including additional review are exhausted.

b.  Element 2 – Adverse Governmental Response: Bar Counsel Dian Suhm dismissed the grievance, without conducting any inquiry, without citing any of the limited dismissal bases permitted by Rule 3-7.3(c)(2) of the Rules Regulating The Florida Bar, and without advising Plaintiff of his Rule 3-7.3(c)(3) right to obtain reviewer-level review. These mandatory procedural steps are non-discretionary; skipping them nullified Plaintiff's access to the Bar's disciplinary forum.

c.  Element 3 – Causation & Injury: The summary dismissal deprived Plaintiff of meaningful redress, chilled his intent to file four additional Bar complaints, and undermined accountability for attorney-facilitated retaliation.

d.  Element 4 – State Action: The Florida Bar and its officers act under color of state law when processing grievances pursuant to authority delegated by the Florida Supreme Court.

66.  **Ultimate Violation Alleged**: By rejecting Plaintiff's grievance without following the Bar's mandatory procedures, Defendants effectively blocked Plaintiff's First-Amendment right to petition the government for redress.

67.  **Harm: (a)** Chilling of further petitioning activity; **(b)** Emotional distress and loss of trust in state oversight; **(c)** Impaired ability to remedy ongoing retaliation through professional-discipline channels.

68.  **Relief Sought**: **(a)** Declaratory judgment that Defendants violated Plaintiff's First-Amendment petition right to petition their government for redress through a mechanism clearly established by the Florida government. **(b)** Injunctive relief compelling the Florida Bar, through individually named defendants in their official capacities, to implement and

follow non-retaliatory, good-faith grievance procedures, including written rule-based grounds for dismissal and notice of review rights.

**COUNT III – CONSPIRACY / JOINT ACTION TO DEPRIVE CIVIL RIGHTS** *(42 U.S.C. § 1983 – First Amendment, Fourteenth Amendment, ADA)*

69.      **Defendants**: **(a)** Town of Orange Park; **(b)** William Whitson (individual capacity); **(c)** Smith, Gambrell & Russell, LLP ("SGR"); **(d)** Lawsikia Hodges (individual capacity); **(e)** Yash Dave (individual capacity); **(f)** Constangy, Brooks, Smith & Prophete, LLP ("Constangy"); **(g)** Colin Thakkar (individual capacity); **(h)** Margaret Zabijaka (individual capacity).

70.      **Statutory Authority**: 42 U.S.C. § 1983 imposes liability on any person who, under color of state law, conspires to deprive another of federally protected rights.

71.      **Controlling Precedent**: *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271 (11th Cir. 2002) (conspiracy elements); *Rayburn v. Hogue*, 241 F.3d 1341 (11th Cir. 2001) (private actors become state actors when acting in concert with officials); *Lane v. Franks*, 573 U.S. 228 (2014) (First-Amendment protection for employee speech).

**72.      Factual Allegations by Element:**

   a.   *Element 1 – Agreement Among Two or More Persons*: Between November 2024 and February 2025 Whitson, Town Attorney Hodges, SGR, and Constangy agreed to produce an "independent" investigation memo that would discredit Plaintiff's whistle-blowing and ADA activity. See Conspiracy Facts ¶ 17-18.

   b.   *Element 2 – Purpose to Violate Federally Protected Rights*: The planned edits removed references to Plaintiff's accommodation requests and labeled him

"insubordinate," intending to suppress his First-Amendment speech and chill future petitioning.

c.   *Element 3 – Overt Acts*: **(a)** SGR partner Yash Dave inserted the 'insubordinate' type language and deleted ADA references; **(b)** Constangy attorneys Colin Thakkar and Margaret Zabijaka accepted those edits and issued the memo on Constangy letterhead on 3 February 2025; **(c)** Whitson circulated the memo to Council and Finance on 20 February 2025 and used it the next day to terminate Plaintiff.

d.   *Element 4 – State Action / Color of Law*: The investigation was commissioned with public funds and performed a core governmental function—personnel discipline—making SGR and Constangy joint state actors under *Rayburn*.

e.   *Element 5 – Resulting Injury*: Plaintiff was terminated, lost wages and benefits, and suffered reputational and emotional harm; other employees were deterred from reporting misconduct because the memo falsely appeared neutral.

73.   **Ultimate Violations Alleged** - Defendants, acting in concert under color of state law, deprived Plaintiff of: **(a)** First-Amendment rights to speak and petition without retaliation; **(b)** Fourteenth-Amendment due-process protections against arbitrary dismissal; **(c)** Rights under the ADA to seek reasonable accommodation free of reprisal.

74.   **Harm:** Loss of employment, wages, and benefits; damage to professional reputation; emotional distress; and chilling of future protected activity.

75.   **Relief Sought: (a)** Declaratory judgment that Defendants engaged in a § 1983 conspiracy to violate Plaintiff's rights; **(b)** Compensatory damages for lost wages, benefits, and emotional distress; **(c)** Punitive damages against Whitson, Hodges, Dave, Thakkar, and Zabijaka;   **(d)**   Joint   and   several   liability   among   all   conspirators;

**(e)** Injunctive relief barring Defendants from labeling any Town investigation "independent" unless all contributors are disclosed and ADA-protected medical information is segregated; **(f)** injunctive relief barring Constangy, SGR, and assigned attorneys from contracting with the Town on personnel and employment related matters as to prevent future occurrences.

**COUNT IV – MUNICIPAL LIABILITY (Monell)** *(42 U.S.C. § 1983 – First & Fourteenth Amendments)*

76.    **Defendant:** Town of Orange Park.

77.    **Statutory Basis**: 42 U.S.C. § 1983.

78.    **Controlling Precedent**: *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) (policy or custom); *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988) (ratification).

79.    **Factual Allegations by Element:**

   a. *Element 1 – Official Policy or Custom:* **(a) Adopted investigation memo:** Whitson and Town Attorney Hodges formally adopted the 3 February 2025 Investigation Results Memo—edited by SGR—to undermine Plaintiff's viable complaints and justify subsequent discipline and termination. See Conspiracy Facts ¶ 17-18. **(b) Custom of Disregarding Right of Free Speech:** The Town, up to and including council members, readily engage in conduct intended to silence dissent that is based on matters of public interest and concern. See Municipal-Liability Facts ¶ 20.

   b. *Element 2 – Final-Policymaker Ratification:* **(a) Affirmative ratification:** The Council accepted Whitson's termination of Plaintiff and took no corrective action before or after the 21 February termination, thereby ratifying the memo's contents and impacts. **(b) Silent ratification:** After receiving Plaintiff's 4 March 2025 Settlement Demand

Letter and 7 March 2025 Notice of Irreparable Injury, the Council remained silent despite Charter § 2-07(b) authority to rescind disciplinary actions. See Municipal-Liability Facts ¶ 19.

c.   *Element 3 – Moving Force Behind the Injury*: The edited memo and the First Amendment custom were indispensable predicates for Plaintiff's discipline, discharge, and reputational damage.

80.   **Ultimate Violation:** Through official policy, established custom, and policymaker ratification, the Town violated Plaintiff's First-Amendment, Fourteenth-Amendment, and ADA rights.

81.   **Harm:** Lost wages and benefits, reputational damage, emotional distress, and chilling of protected activity.

82.   **Relief Sought: (a)**  Declaratory judgment that the Town's policy, custom, and ratification are unconstitutional; **(b)** Compensatory damages (back-pay, front-pay, emotional-distress). **(c)** Injunction requiring: **(i)** Leadership training for all current and future Town Councils, Town Managers, and Town Attorneys **(ii)** full disclosure of all contributors to any future "independent" investigations.

### COUNT V – POLICY/CUSTOM LIABILITY OF PRIVATE CORPORATE ACTORS *(42 U.S.C. § 1983 – First & Fourteenth Amendments)*

83.   **Defendants: (a)** Smith, Gambrell & Russell, LLP ("SGR"); **(b)** Yash B. Dave (SGR partner, individual capacity); **(c)** Constangy, Brooks, Smith & Prophete, LLP ("Constangy"); **(d)** Colin Thakkar (individual capacity); **(e)**Margaret Zabijaka (individual capacity); **(f)** Neil Wasser (Constangy Chairman, individual capacity); **(g)** Cara Crotty (Constangy voting partner, individual capacity).

84.     **Statutory Basis**: 42 U.S.C. § 1983.

85.     **Controlling Precedent**: *Buckner v. Toro*, 116 F.3d 450 (11th Cir. 1997) (private hospital as state actor); *Denno v. Sch. Bd.*, 218 F.3d 1267 (11th Cir. 2000) (private actor performing governmental function).

86.     **Joint-Action / Policy Allegations:**

   a.   *Element 1 – State Action by Private Entities*: The Town delegated core disciplinary authority to Constangy and SGR, paid with public funds, making both firms joint state actors. See Conspiracy Facts ¶ 17-18; Municipal-Liability Facts ¶ 19-20.

   b.   *Element 2 – Corporate Policy or Custom: (*a) **SGR policy:** Employment-law chair Yash Dave possessed final authority for SGR's work for the Town as he took lead for all employment matters; his editing a tax payer funded "independent" investigation memo on behalf of his client and deleting ADA references represent SGR policy; (b) **Constangy policy:** Partners Zabijaka., Wasser, and Crotty were directly notified of the investigation defects and harm and tacitly ratified the edits by allowing the investigative results to stand and harm to continue.

   c.   *Element 3 – Moving Force:* The edited memo, adopted verbatim by Whitson, was the immediate predicate for Plaintiff's termination and chilled co-worker complaints; Constangy's continued endorsement of the memo sustains ongoing harm.

87.     **Ultimate Violation:** By crafting and ratifying a sham "independent" investigation under color of state law, the private-firm defendants deprived Plaintiff of First-Amendment, Fourteenth-Amendment, and ADA rights.

88.     **Harm:** Economic loss, reputational damage, and severe emotional distress.

89.     **Relief Sought: (a)** Compensatory damages, jointly and severally, against SGR, Constangy, and their individual partners. **(b)** Punitive damages against Constangy, SGR, Dave, Hodges, Thakkar, and Zabijaka for willful participation in a defective investigation despite direct knowledge of its flaws. **(c)** Injunction prohibiting Defendants from labeling any investigation "independent" without full disclosure of all contributors and editors.

# FEDERAL STATUTORY EMPLOYMENT CLAIMS (COUNTS VI – X)

### COUNT VI – FAILURE TO PROVIDE REASONABLE ACCOMMODATION
*(ADA Title I, 42 U.S.C. § 12112(b)(5)(A)-(B))*

90.     **73. Defendant**   Town of Orange Park.

91.     **74. Statutory Framework**   Under 42 U.S.C. § 12112(b)(5), an employer must provide a reasonable accommodation to a qualified individual with a disability once on notice, unless doing so would impose undue hardship.

92.     **Factual Allegations by Element:**

   a.  *Element 1 – Qualified Individual with a Disability*: Plaintiff is a 100 % VA-rated disabled veteran diagnosed with PTSD-related anxiety/depression. The Town's **12 November 2024** performance evaluation rated him "well above average" or "excellent" in every HR-Manager competency, confirming he could perform essential functions. See Comprehensive Facts ¶ 1-3.

   b.  *Element 2 – Employer Notice & Accommodation Requests*: Written requests were submitted **7 Jan 2025** (e-mail), **31 Jan 2025** (formal ADA form), and **20 Feb 2025** (demand letter), seeking: (a) written supervisory communication, (b) a neutral ADA

facilitator, (c) confidentiality of medical information, and (d) paid administrative leave if more time was needed since six weeks elapsed since original request. See ADA Timeline ¶ 19-24.

c. *Element 3 – Employer's Refusal / Failure to Engage* - Whitson: **(a) 10 Jan 2025** demanded face-to-face meetings and proof of disability, contradicting the accommodation granted three days earlier; **(b) 14 Feb 2025** issued a written reprimand rejecting the requests, stating flexibility "cannot be accommodated"; **(c)** Never convened an interactive-process meeting and terminated Plaintiff on **21 Feb 2025**. ADA Timeline ¶ 22-25.

d. *Element 4 – Reasonableness & Lack of Undue Hardship*: Requested accommodations were cost-free, involved modern workplace practices already used before Whitson's tenure, and would not eliminate any essential job function.

93. **Ultimate Violation:** By refusing to engage in the interactive process and denying reasonable, low-cost accommodations, the Town violated 42 U.S.C. § 12112(b)(5).

94. **Harm:** Lost wages, benefits, and pension credits; severe emotional distress; exacerbation of disability and onset of PTSD symptoms.

95. **Relief Sought**: **(a)** Back pay (with interest) and front pay (cash equivalent of full benefits and stipends); **(b)** Compensatory damages for emotional distress; **(c)** Injunction requiring the Town to **(i)** honor agreed accommodations until modified through a formal interactive process, **(ii)** train all current and future managers, department heads, Town Manager, and Town Attorney on appropriate handling of ADA medical records and information, **(iii)** require the Town to develop, institute, and follow a standardized procedure for facilitating interactive processes in accordance federal laws.

and **(iv)** train all current and future employees, Town Manager, and Town Attorney on ADA interactive-process duties within 90 days.

**COUNT VII – ADA RETALIATION** *(42 U.S.C. § 12203(a))*

96.    **79. Defendants**: **(a)** Town of Orange Park; **(b)** William Whitson (individual capacity); **(c)** Smith, Gambrell & Russell, LLP; **(d)** Lawsikia Hodges (individual capacity); **(e)** Yash Dave (individual capacity); **(f)** Constangy, Brooks, Smith & Prophete, LLP; **(g)** Colin Thakkar (individual capacity); **(h)** Margaret Zabijaka (individual capacity).

97.    **80. Statutory Basis**: 42 U.S.C. § 12203(a) prohibits retaliation for opposing ADA discrimination or requesting accommodation.

98.    **81. Controlling Precedent**: *Shotz v. City of Plantation*, 344 F.3d 1161 (11th Cir. 2003); *Lucas v. W.W. Grainger*, 257 F.3d 1249 (11th Cir. 2001); *Farley v. Nationwide*, 197 F.3d 1322 (11th Cir. 1999).

99.    **Factual Allegations by Element:**

a.  *Element 1 – Protected Activity*: Plaintiff **(a)** submitted multiple accommodation requests (ADA Timeline ¶ 19-23); **(b)** filed a formal ADA complaint on **19 Feb 2025**; **(c)** sent a **20 Feb 2025** Demand for Action to Hodges opposing retaliation and notifying Defendants of pending EEOC and Disability Rights Florida involvement. ADA Timeline ¶ 24-25.

b.  *Element 2 – Adverse Actions*: **(a) 14 Feb 2025** written reprimand questioning the legitimacy of Plaintiff's disability; **(b)** Public disclosure of "claims panic attack" on timesheets; **(c) 20 Feb 2025** final-warning memo branding further requests "insubordination"; **(d) 21 Feb 2025** termination without stated cause. ADA Timeline ¶ 22-25.

c.  *Element 3 – Causal Link (Temporal & Documentary)*: The reprimand, final warning, and termination occurred within days—or hours—of each protected activity. Conspiracy Facts ¶ 17-18 show SGR and Constangy edited the Investigation Memo to delete references to Plaintiff's ADA activity, demonstrating retaliatory motive.

d.  *Element 4 – Joint Actor Liability of Private Defendants*: SGR attorneys Dave and Hodges co-authored retaliatory communications later issued under Whitson's name; Constangy partners Thakkar and Zabijaka incorporated the edits into a memo used to justify discipline, making the private defendants state actors under *Rayburn v. Hogue*.

100.  **Ultimate Violation**: Defendants terminated and otherwise disciplined Plaintiff because he requested ADA accommodations and opposed unlawful practices, in violation of 42 U.S.C. § 12203(a).

101.  **Harm**: Loss of livelihood and benefits; aggravation of service-connected disability; emotional distress and family hardship; reputational damage; chilling effect on others seeking accommodation.

102.  **Relief Sought**: **(a)** Declaratory judgment that Defendants violated the ADA retaliation provision; **(b)** Back pay and front pay**; (c)** Compensatory damages for emotional, reputational, and financial injury; **(d)** Punitive damages against Whitson, Hodges, Dave, Thakkar, and Zabijaka; and (e) injunctive relief requiring the Town to **(i)** development, implement, and enforce policies and procedures that prohibit retaliatory conduct against employees exercising their rights under ADA**, (ii)** train all current and future supervisors, managers, department heads, Town Manager, and Town Attorney on appropriate handling of accommodation requests in ways that prevent perceived retaliation, **(iii)** train employees upon hire and biannually educating personnel on the procedure and

the Town's obligations to engage in good faith absent of conduct that may dissuade employees from submitting requests, and **(iv)** prohibit currently involved firms and attorneys from influencing the development, implementation, training, or enforcement of the Town's ADA procedures.

**COUNT VIII – ADA INTERFERENCE / COERCION** *(42 U.S.C. § 12203(b))*

103.     **Defendants: (a)** Town of Orange Park; **(b)** William Whitson (individual capacity); **(c)** Smith, Gambrell & Russell, LLP ("SGR"); **(d)** Lawsikia Hodges (individual capacity); **(e)** Yash Dave (individual capacity); **(f)** Daniel Bean (individual capacity); **(g)** Constangy, Brooks, Smith & Prophete, LLP; **(h)** Colin Thakkar (individual capacity); **(i)** Margaret Zabijaka (individual capacity).

104.     **87. Statutory Basis:** 42 U.S.C. § 12203(b) forbids any person from coercing, intimidating, threatening, or interfering with an individual's exercise of ADA rights.

105.     **88. Factual Allegations by Element**

a.  *Element 1 – Plaintiff's Exercise of ADA Rights*: Plaintiff submitted written accommodation requests on 7 Jan 2025 and 31 Jan 2025 and filed a formal ADA complaint on 19 Feb 2025. See ADA Timeline ¶ 19-24.

b.  *Element 2 – Interference / Coercion by Defendants*: **(a) Whitson** demanded face-to-face meetings and proof of disability three days after agreeing to written-communication accommodation, contradicting the granted request (ADA Timeline ¶ 20-22). **(b) Whitson** publicly disclosed "claims panic attack" on Plaintiff's timesheet and issued written reprimands on 14 Feb 2025 and 20 Feb 2025 branding future requests "insubordination" (ADA Timeline ¶ 22-25). **(c) Hodges, Dave, (SGR) and Thakkar,**

**Zabijaka (Constangy)** removed references to Plaintiff's ADA activity from the Investigation Memo, portraying him as unprofessional (Conspiracy Facts ¶ 17-18). **(d)** The edited memo was adopted on 20 Feb 2025 and used to terminate Plaintiff the next day, deterring him and co-workers from asserting ADA rights (ADA Timeline ¶ 25).

c. *Element 3 – Causal Link:* Each act followed closely after Plaintiff's protected ADA activity and expressly targeted his accommodation requests, ADA complaints, or the Plaintiffs himself for his disability.

106. **Ultimate Violation**: Defendants' coordinated reprimands, public disclosure of medical information, and memo sanitization coerced and interfered with Plaintiff's enjoyment of ADA rights, violating 42 U.S.C. § 12203(b).

107. **Harm:** Exacerbation disability symptoms, onset of PTSD symptoms, emotional distress, reputational damage, and termination.

**108.** **Relief Sought: (a)** Compensatory damages for emotional distress and economic loss; **(b)** Punitive damages against Whitson, Hodges, Dave, Bean, Thakkar, and Zabijaka; **(c)** Injunction requiring: **(i)** purging non-segregated medical records, **(ii)** retraction, repudiation, or correction and completion of a lawfully compliant independent investigation that accurately depicts Plaintiff's engagement in protected activities, **(iii)** ADA-confidentiality/interference training for all current and future supervisors, management, Town Manager, and Town Attorney within 90 days, **(iv)** training for employees upon hire and biannually educating personnel on the procedure and the Town's, and associate's of the Town's, obligations to engage in good faith absent of undue interference, and (vii) prohibit currently involved firms and attorneys from influencing the development, implementation, training, or enforcement of the Town's ADA procedures.

**COUNT IX – RETALIATION (Title VII)** *(42 U.S.C. § 2000e-3(a))*

109.    **Defendants: (a)** Town of Orange Park; **(b)** William Whitson (individual capacity); **(c)** Smith, Gambrell & Russell, LLP; **(d)** Lawsikia Hodges (individual capacity); **(e)** Yash Dave (individual capacity); **(f)** Constangy, Brooks, Smith & Prophete, LLP; **(g)** Colin Thakkar (individual capacity); **(h)** Margaret Zabijaka (individual capacity); **(i)** Winnette Sandlon (individual capacity)

110.    **Statutory Basis:** 42 U.S.C. § 2000e-3(a) bars retaliation against an employee for opposing practices made unlawful by Title VII.

111.    **Controlling Precedent:** *Crawford v. Metro. Gov't of Nashville*, 555 U.S. 271 (2009); *Goldsmith v. Bagby Elevator*, 513 F.3d 1261 (11th Cir. 2008); *Johnson v. Miami-Dade Cnty.*, 948 F.3d 1318 (11th Cir. 2020).

112.    **Factual Allegations by Element:**

  a.  *Element 1 – Protected Activity*: In **Dec 2024** Plaintiff filed a formal complaint alleging Whitson's gender-based misuse of female staff and hostile-work-environment conduct. See Title VII Facts ¶ 26-28.

  b.  *Element 2 – Adverse Actions*: **(a)** Councilmember Sandlin told employee Emily Dockery that Plaintiff complained only because he "didn't get the Town Manager job," an attempt to discredit protected activity (Title VII Facts ¶ 29). **(b)** Anderson directed Plaintiff not to communicate with Council (Title VII Facts ¶ 28). **(c)** SGR and Constangy revised the Investigation Memo to minimize Plaintiff's Title VII complaint and portray him as insubordinate and/or incompetent (Conspiracy Facts ¶ 17-18). **(d)** Plaintiff was reprimanded in Feb 2025 and terminated on 21 Feb 2025 without cause (Comprehensive Facts ¶ 8; ADA Timeline ¶ 25).

c. *Element 3 – Causal Connection*: Reprimands, memo edits, and termination followed within weeks of Plaintiff's Title VII complaint; the memo scrub explicitly removed references to his protected activity.

113. **Ultimate Violation**: Defendants retaliated against Plaintiff for opposing gender-based discrimination, violating 42 U.S.C. § 2000e-3(a).

114. **Harm:** Loss of employment and career trajectory; emotional distress; reputational damage; diminished future earning capacity.

115. **Relief Sought: (a)** Declaratory judgment that Defendants violated Title VII's anti-retaliation provision; **(b)** Back pay and front pay; **(c)** Compensatory damages for emotional and reputational harm; **(d)** Punitive damages against Whitson, Hodges, Dave, Thakkar, Zabijaka, and Sandlin; **(e)** Injunctive Relief requiring the Town of Orange Park **(i)** to development and implement protected reporting procedures that protects the reporting party from retaliation, **(ii)** training for all current and future employees, Town Manager, Town Attorney, and Councilmembers on the protections afforded by federal law for employees reporting concerns of discrimination and harassment.

## COUNT X – ADA CONFIDENTIALITY VIOLATION *(42 U.S.C. § 12112(d)(3)-(4))*

116. **Defendant**   Town of Orange Park.

117. **Statutory Basis**   42 U.S.C. § 12112(d)(3)-(4) requires that disability-related medical information be kept on separate forms, in separate medical files, and disclosed only to personnel with a business need to know.

118. **Factual Allegations by Element:**

a. *Element 1 – Disability-Related Information in Employer's Possession*: Plaintiff submitted a Town ADA-accommodation form and provider letter on **31 Jan 2025**

and informed Interim Town Manager Whitson of an ER visit for a panic attack on **6 Feb 2025**. See ADA Timeline ¶ 19-21.

b.   *Element 2 – Failure to Segregate*: On **19 Feb 2025** Whitson hand-wrote "claims panic attack" on Plaintiff's paper timesheet, a document routinely routed through Payroll. The Payroll Clerk and at least two other non-HR staff viewed the note. ADA Timeline ¶ 22-24.

c.   *Element 3 – Unauthorized Disclosure*: Plaintiff discovered the notation while initialing a timesheet correction, immediately e-mailed Whitson protesting the breach, and filed a confidentiality-breach complaint with Clerk Courtney Russo, copying Town Attorney Hodges. No legitimate business necessity required medical details for payroll processing.

119.   **Ultimate Violation**: By recording and disseminating medical information outside a segregated ADA file and to personnel without a need to know, the Town violated 42 U.S.C. § 12112(d)(3)-(4).

120.   **Harm:** Emotional distress, humiliation, exacerbation of disability symptoms, and onset of PTSD symptoms..

121.   **Relief Sought: (a)** Compensatory damages under 42 U.S.C. § 1981a; **(b)** Injunction requiring the Town to **(i)** segregate all ADA medical files, **(ii)** train all current and future managers, department heads, and the Town Manager on confidentiality, **(iii)** audit access logs quarterly for two years, and **(iv)** train employees upon hire and biannually of the Town's efforts and obligations to maintain confidentiality.

## STATE CONSTITUTIONAL & STATUTORY CLAIMS (XI & XII)

**COUNT XI – DENIAL OF RIGHT TO PETITION** *(FLA. CONST. art. I, § 5)*

122.    **105. Defendants: (a)** The Florida Bar; **(b)** Roland Sanchez-Medina Jr. (official capacity); **(c)** Rosalyn Sia Baker-Barnes (official capacity); **(d)** Joshua E. Doyle (official capacity); **(e)** Dian Suhm (individual capacity).

123.    **106. Constitutional Basis:** Florida Constitution, Article I, § 5 guarantees the right "to petition for redress of grievances."

124.    **107. Controlling Precedent:** *Florida Canners Ass'n v. Dep't of Citrus*, 371 So. 2d 503 (Fla. 2d DCA 1979); *Dep't of Agric. v. Bonanno*, 568 So. 2d 24 (Fla. 1990).

**125.    Factual Allegations by Element:**

a.   *Element 1 – Protected Petitioning Activity:* Plaintiff filed a comprehensive sworn complaint with the Florida Bar on **15 Apr 2025** alleging attorney misconduct and attaching corroborating exhibits. State-Statutory Facts ¶ 31-32.

b.   *Element 2 – Governmental Obstruction:* Bar Counsel **Dian Suhm** dismissed the complaint the same day without inquiry, findings, or an opportunity to clarify, and without advising Plaintiff of review rights. Bar leadership—Sanchez-Medina, Baker-Barnes, Doyle—received notice yet took no corrective action.

c.   *Element 3 – Resulting Injury:* The summary dismissal deprived Plaintiff of the only state-sanctioned forum for attorney discipline, chilled his intent to submit four additional complaints, and emboldened ongoing retaliation.

126.    **Ultimate Violation:** Defendants' summary dismissal obstructed Plaintiff's right to "instruct" and "petition" state oversight bodies, violating Article I, § 5 of the Florida Constitution.

127. **Harm:** Denial of lawful venue for redress; escalation of retaliation; emotional distress; loss of confidence in self-governing remedies.

128. **Relief Sought: (a)** Declaratory judgment that Defendants violated Article I, § 5; **(b)** Injunctive relief requiring transparent, constitutionally adequate grievance and reporting procedures, including written rule-based grounds for dismissal and notice of review rights; and (c) training upon hire and biannually for all Florida Bar Counsel on the appropriate standard of reviewing and processing complaints against attorneys.

**COUNT XII – AIDING & ABETTING RETALIATION** *(Florida Civil Rights Act, Fla. Stat. § 760.10(1) & (5))*

129. **Defendants: (a)** Smith, Gambrell & Russell, LLP ("SGR"); (b) Yash Dave (individual capacity); (c) Daniel Bean (individual capacity); (d) Constangy, Brooks, Smith & Prophete, LLP ("Constangy"); (e) Colin Thakkar (individual capacity); (f) Margaret Zabijaka (individual capacity).

130. **125. Statutory Basis: (a)** Section 760.10(1), Florida Statutes, forbids an employer from retaliating against an individual who opposes unlawful discrimination. (b) Section 760.10(5) imposes liability on any person who aids, abets, incites, compels, or coerces such retaliation.

131. **Controlling Precedent:** Outside counsel may incur liability as an "agent" when they substantially assist an employer's retaliation, and the litigation privilege does not bar statutory civil-rights claims. *DelMonico v. Traynor*, 116 So. 3d 1205, 1216–17 (Fla. 2013).

132. **Factual Allegations by Element:**

   a. *Underlying Retaliation by the Town*: Reprimands, a hostile "independent" investigation memo, public disclosure of medical information, and the 21 Feb 2025

termination followed Plaintiff's ADA and Title VII protected activities. See ADA Timeline ¶ 22-25; Conspiracy Facts ¶ 17-18; Title VII Facts ¶ 26-29:

a. *SGR – Yash Dave & Daniel Bean*:

    i. **Knowledge** – By early February 2025 Dave and Bean reviewed drafts of the investigation memo and Plaintiff's ADA correspondence, giving them full awareness of his protected activity.

    ii. **Affirmative Acts** – Added tracked-change edits that deleted ADA and Title VII references and inserted language calling Plaintiff "insubordinate." Kept the confidentiality-breach complaint in the legal channel, steering it toward discipline.

    iii. **Substantial Assistance** – Their edits and legal posture supplied the Town with the pretext and procedural framework used to justify termination.

b. Constangy – Colin Thakkar & Margaret Zabijaka:

    i. **Knowledge** – By February 2025 Thakkar had reviewed Plaintiff's requests for accommodation, Whitson's grating the accommodation, and Whitson's unilateral retraction of accommodation and knew retaliation and disability claims were pending.

    ii. **Affirmative Acts** – On 3 Feb 2025 issued an "Investigation Results Memorandum" on Constangy letterhead declaring Plaintiff's complaints unsubstantiated and excluding accommodation issues from scope.

      iii.  **Substantial Assistance** - The memorandum, marketed as neutral, became the Town's chief justification for undermining Plaintiff's protected activities and the 21 Feb 2025 firing.

b.  Resulting Injury: Defendants' assistance cemented Plaintiff's dismissal, foreclosed a good-faith accommodation process, and caused continuing economic and emotional harm.

133.  **Ultimate Violation:** By knowingly facilitating and reinforcing the Town's retaliation, each Defendant aided and abetted a violation of Fla. Stat. § 760.10(1), incurring liability under § 760.10(5).

134.  **129. Harm:** Lost wages and benefits, severe emotional distress, and damage to professional reputation.

135.  **130. Relief Sought: (a)** Compensatory damages, jointly and severally, against all aiding-and-abetting Defendants; **(b)** Punitive damages where legally permissible; **(c)** Injunction prohibiting Defendants from further participation in retaliatory investigations and requiring written corrective statements to any administrative agency that received their prior communications;

# COMMON LAW (COUNTS XII – XVI)

## COUNT XIII – NEGLIGENT HIRING, SUPERVISION, AND RETENTION

136.  **112. Defendants**: **(a)** Town of Orange Park; **(b)** Mayor Randy Anderson; **(c)** Vice-Mayor Winnette Sandlin; **(d)** Glen Taylor, **(e)** Doug Benefield, and **(f)** Kenneth Vogel (individual capacities).

137. **Legal Standard:** Florida recognizes three related employer torts: **(a)** negligent hiring (failure to screen for known risks), **(b)** negligent supervision (failure to control an unfit employee), and **(c)** negligent retention (failure to discharge after misconduct becomes apparent). Liability attaches when the employee's unfitness was or should have been foreseeable and proximately causes the plaintiff's injury.

138. *Notice under § 768.28(6), Fla. Stat.*: Plaintiff provided written notice of Whitson's poor employment record, his adverse effects on work environments, several formal complaints, and claims and constitutional violations from October 2024 through March 2025 including the 4 March 2025 Settlement Demand Letter and 7 March 2025 Notice of Irreparable Injury, satisfying—or alternatively waiving—pre-suit notice because the same facts give rise to federal § 1983 claims (see *Estate of McCall v. United States*, 134 So. 3d 894, 915 n.13 (Fla. 2014)).

139. **Factual Allegations by Element:**

   a. *Negligent Hiring*: **(a) Flagler Beach termination:** William Whitson was fired for cause on 8 Sep 2022 after a 4-1 vote citing hostile-work-environment complaints and fiscal mismanagement (Negligent-Hiring Facts ¶ 33). **(b) Actual notice before hire:** On 9 Oct 2024 those minutes were e-mailed to Mayor Anderson and Vice-Mayor Sandlin; on 16 Oct 2024 Plaintiff lodged a Formal Dispute warning that hiring Whitson "poses serious retaliation and ADA-compliance risks." **(c) No due diligence:** The Council hired Whitson on 20 Oct 2024 without a background check or reference calls.

   b. *Negligent Supervision & Retention*: Within eight weeks of hire Whitson **(i)** reprimanded Plaintiff for whistle-blowing/ADA/First Amendment protected activity,

**(ii)** effectively disintegrated employee morale in Town Hall from +75 eNPS to -11 eNPS, **(iii)** disclosed Plaintiff's medical information on a timesheet (Comprehensive Facts ¶ 6-8; ADA Timeline ¶ 22-24), and **(iv)** created an environment akin to a hostile work environment. All incidents were reported to the Council directly, or vicariously through the Town Attorney, which took no corrective action and ratified Whitson's 21 Feb 2025 termination decision.

c.    *Foreseeability & Breach*: The Council knew of Whitson's prior termination in part for severe degradation of employee morale and Plaintiff's pre-hire warnings, yet allowed him unfettered authority over HR matters, making Plaintiff's injuries foreseeable.

140.    **115. Ultimate Violation**: By ignoring red-flag information and then failing to supervise or remove Whitson after repeated misconduct, the Town and its policymakers proximately caused Plaintiff's retaliation, privacy breach, and emotional injuries.

141.    **116. Harm**: Lost wages and benefits, diminished career prospects, reputational damage, emotional distress, aggravated PTSD symptoms.

142.    **117. Relief Sought**: **(a)** Compensatory damages for economic and emotional loss; **(b)** Punitive damages against individual policymakers for willful disregard of known risks (per § 768.28(9)(a)); **(c)** injunction requiring the Town to development, implement, and adhere to standardized hiring practices that conform with federal and state law as well as industry best practices, applicable for both permanent and interim appointments.

**COUNT XIV – INVASION OF PRIVACY / BREACH OF CONFIDENTIALITY**

143.    **118. Defendants**: **(a)** Town of Orange Park; **(b)** William Whitson (individual capacity).

144.    **Legal Framework:** Florida recognizes (1) public disclosure of private facts and (2) breach of a confidential relationship when an employer improperly releases medical information. A public official acting "with malicious purpose or in bad faith" remains personally liable under § 768.28(9)(a), Fla. Stat.

145.    **Supporting Facts (incorporating Count X ¶ 101-103):**

   a. *Private medical facts disclosed*: Whitson hand-wrote "claims panic attack" on Plaintiff's 19 Feb 2025 timesheet—a document routed through Payroll—exposing disability information to staff with no medical need to know.

   b. *Breach of confidentiality*: Plaintiff immediately protested, filed a confidentiality-breach complaint, and informed Hodges that additional employees had learned of the note, yet the Town took no remedial action.

   c. *Bad faith / Malice*: Whitson knew ADA files must be segregated (ADA Timeline ¶ 20) yet intentionally placed medical information in an accessible payroll record, satisfying § 768.28(9)(a).

146.    **121. Ultimate Violation**: Defendants publicly disclosed private medical facts and breached the confidential employer-employee relationship, actionable under Florida common law.

147.    **122. Harm**: Severe emotional distress, humiliation, aggravated disability symptoms, loss of trust in the Town's accommodation process.

148.    **123. Relief Sought**: **(a)** Actual damages for emotional distress; **(b)** Punitive damages against Whitson for malicious or bad-faith conduct; **(c)** Injunction requiring the Town to **(i)** purge or sequester all improperly shared medical files and information, **(ii)** adopt a written ADA medical-record segregation policy, **(iii)** train all current and future

supervisory, managerial, Town Manager, and Town Attorney personnel on confidentiality obligations, and **(iv)** train all Town employees upon hire and bi-annually of their rights to medical privacy.

## COUNT XIV – CONSTRUCTIVE AND WRONGFUL DISCHARGE

149.    **Defendant: (a)** Town of Orange Park (Monell) and **(b)** William Whitson (individual)

150.    **Statutory / Common-Law Authority**: Constructive discharge is cognizable under federal anti-retaliation statutes—including Title VII, the ADA, and the Florida Whistle-blower Act—when an employee's working conditions become so intolerable that a reasonable person would feel compelled to resign or where discharge is effected under a retaliatory pretext. Wrongful discharge also lies where a termination violates these same statutory protections or contravenes an express employment policy (e.g., the Town Charter and Handbook commitments).

151.    **Controlling Precedent**: *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004) (constructive discharge arises when working conditions become "so intolerable that a reasonable person… would have felt compelled to resign"); *Green v. Brennan*, 578 U.S. 547 (2016) (constructive-discharge standard applies to federal discrimination statutes); *Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009) (Title VII/§ 1983 constructive discharge); *Poole v. Country Club of Columbus*, 129 F.3d 551, 553-54 (11th Cir. 1997) (severe reduction in duties plus hostility can establish constructive discharge).

152.    **Factual Allegations by Element**

a. *Element 1 – Satisfactory Performance:* **(a)** Plaintiff's November 2024 evaluation rated him overall well above average with no negative marks. Maximum marks were awarded for job knowledge and initiative. **(b)** Authored the "Workforce Transformation Master Plan 2040" to align with the Town's Vision 2040 master plan, and **(c)** implemented recurring climate surveys, initiatives praised by Town leadership.

b. *Element 2 – Intolerable or Unlawful Conditions:* **(a)** Reprimanded for following his position description and Charter duties (Comprehensive Facts ¶ 6). **(b)** Denied requested accommodations and forced to engage with a supervisor who triggered PTSD symptoms (ADA Timeline ¶ 19-24). **(c)** Targeted by an investigation memo revised by outside counsel to portray him as insubordinate (Conspiracy Facts ¶ 17-18). **(d)** Public disclosure of medical information on a timesheet (ADA Confidentiality Facts ¶ 101-102).

c. *Element 3 – Employer's Deliberate Action Leading to Termination*: The Council and Town Attorney ignored multiple warnings—including the Notice of Alleged Misconduct, Formal Complaint, Revised Formal Complaint, and numerous emails—and ratified Whitson's 21 Feb 2025 termination, making continued employment impossible and the discharge wrongful.

153. **Harm:** Lost wages and benefits, emotional distress, aggravated PTSD, reputational damage, and loss of career trajectory.

154. **Relief Sought: (a)** Compensatory damages, **(b)** back pay, **(c)** front pay, and **(d)** emotional-distress damages.

## COUNT XV – BREACH OF CONTRACT

155.     **Defendant:** Town of Orange Park

156.     **Legal Authority**: This claim sounds in Florida common-law contract principles.

An employment agreement may be formed (or its terms modified) by written position descriptions, employee handbooks, municipal charters, and other "documents expressly adopted or incorporated by reference" and accepted by the employee. See *Restatement (Second) of Contracts* § 1; Fla. Stat. § 448.08 (authorizing fee awards in actions for unpaid wages under a contract).

157.     **Controlling Precedent**: *Quaker Oats Co. v. Hammer*, 570 So. 2d 1368, 1370 (Fla. 4th DCA 1990) (employer may be liable for breaching terms contained in an employee handbook or policy manual); *Maggio v. Fla. Dep't of Labor*, 448 So. 2d 623, 625 (Fla. 1st DCA 1984) (written personnel policies can ripen into enforceable contractual obligations); *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1317 (11th Cir. 1999) (Florida law implies a covenant of good faith and fair dealing in every contract).

158.     **Formation of Contract: (a)** The Town hired Plaintiff under a written Human-Resources-Manager Position Description ("HR PD"); (b) The Employee Handbook, Town Charter, HR PD, and Town-Manager Position Description ("TM PD") together formed express and implied terms of employment and operational governance; (c) Plaintiff accepted and performed in exchange for salary, benefits, and the Town's reciprocal obligation to follow its own policies.

159.     **Contractual Duty to Foster a Positive Work Environment: (a)** The TM PD assigns the Town Manager responsibility to create and maintain a collaborative, respectful, and equitable workplace; **(b)** Handbook § 3.2 echoes this duty: "All supervisors, up to and

including the Town Manager, shall maintain a positive working environment free from retaliation;" **(c)** On **16 October 2024**—during a Council meeting—Vice-Mayor Winnette Sandlin stated she was "confident Town Hall staff can help any incoming Town Manager acclimate to the climate," effectively shifting the contractual duty from the Manager to subordinate staff and contradicting the TM PD and Handbook.

160.    Breach by Employer: **(a)    Reassignment of duty:** The Council's public endorsement of staff-driven "acclimation" relieved Interim Manager Whitson of the TM PD duty to maintain a positive environment; **(b) Discipline for following contract:** Plaintiff was reprimanded and then terminated for performing tasks required by the HR PD, Town Charter, and federal statutes (ADA, Title VII); **(c) Policy bypass:** The Town ignored Handbook disciplinary procedures, relied on an investigation memo edited by outside counsel under a façade of independence, and politically interfered with the Interim-Manager selection process.

161.    **Breach of Good Faith and Fair Dealing:** By undermining the contractual allocation of managerial responsibility—and punishing Plaintiff for enforcing it—the Town violated the covenant of good faith implicit in every Florida contract.

162.    **145. Damages:** Lost wages, lost career trajectory, reputational injury, severe emotional distress, and forfeiture of the opportunity to implement the Workforce Transformation Master Plan 2040.

163.    **Relief Sought**: **(a)** Compensatory damages for economic and emotional loss; **(b)** Equitable relief restoring back pay and benefits; **(c)** Front pay through 2040 to include regular cost of living adjustments, assumption of satisfactory performance for merit increases, cash equivalents for all benefits, stipends, and PTO that would be accrued, as

well as cash equivalent of any additional employer costs incurred on behalf of an employee including, but not limited to, Social Security, Medicaid, Workers' Compensation, etc…

## COUNT XVI – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

164.    **Defendants: (a)** Town of Orange Park (Monell) **(b)** William Whitson; **(c)** Mayor Randy Anderson; **(d)** Vice-Mayor Winnette Sandling; Council members **(e)** Glenn Taylor, **(f)** Doug Benefield, and **(g)** Kenneth Vogel, **(h)** outside-counsel firms SGR (**(i)** Hodges, **(j)** Dave) and **(k)** Constangy (**(l)** Thakkar, **(m)** Zabijaka). All individual defendants are sued personally; municipal liability is pleaded under § 768.28(9)(a) (bad-faith exception).

165.    **Legal Basis**: Florida recognizes the tort of Intentional Infliction of Emotional Distress ("IIED") under the Restatement (Second) of Torts § 46. Liability arises where a defendant's conduct is (1) intentional or reckless, (2) outrageous—"so extreme as to go beyond all bounds of decency," (3) the cause of the plaintiff's emotional distress, and (4) the distress is severe.

166.    **Controlling Precedent**: **(a)** *Metropolitan Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278-79 (Fla. 1985) (adopting Restatement § 46 elements); *(b) Liberty Mut. Ins. Co. v. Steadman*, 968 So. 2d 592, 595 (Fla. 2d DCA 2007) (reaffirming high "outrageousness" bar); **(c)** *Johnson v. Thigpen*, 788 So. 2d 410, 412 (Fla. 1st DCA 2001) (public-employee IIED may proceed where conduct exceeds all bounds of decency).

167.    **Outrageous Conduct (summarised)**

   a. **Fabricated "independent" investigation** – SGR deleted ADA references and branded Plaintiff insubordinate; Constangy issued the memo as neutral although co-authored with Town representation.

b.  **Public disclosure of psychiatric condition** – Whitson wrote "claims panic attack" on Plaintiff's timesheet routed through Payroll.

c.  **Coercive medical demands & final warning** – Whitson threatened discipline over protected speech and unless Plaintiff produced more medical data.

d.  **Council-meeting ridicule** – Anderson declared "We can just get rid of HR" after Plaintiff's statements as a concerned citizen advocating for public safety.

e.  **Retroactive disqualification letter** – Hodges and Dave ghost-wrote a retaliatory letter disqualifying Plaintiff from Interim Manager candidacy.

f.  **Termination hours after Psychiatric visit** – Whitson fired Plaintiff within hours after learning of Plaintiff's visit with a Psychiatrist, which shows Plaintiff's intent to comply with Whitson's demands prior to authorizing accomodation.

g.  **Cover-up of privacy breach** – Hodges diverted a grievance to prevent neutral HR review.

h.  Collectively, this conduct exceeds all bounds of decency tolerated in a civilized society.

i.  *Intent / Recklessness:* Defendants escalated misconduct despite repeated warnings that it aggravated Plaintiff's service-connected disability, and after being made aware of Plaintiff's emergency room visit for acute anxiety with dangerously elevated blood pressure.

j.  *Severe Emotional Distress:* Plaintiff required ER treatment on 6 Feb 2025, ongoing psychiatric and psychological care; VA increased his rating to 100 % P&T effective 12 Feb 2025; termination occurred after Plaintiff's date of 100% disability, indicating trauma beyond want is generally possible.

168.    **Harm**: Future mental-health expenses, lost wages, permanent psychological harm, loss of enjoyment of life, loss of sense of purpose in HR career field.

169.    **Relief Sought**: **(a) Compensatory damages** for emotional and economic loss; **(b) Special damages.** Future mental health expenses beyond those covered by the Department of Veterans Affairs; lost wages, front pay, pension accruals, and loss of enjoyment of life due to permanent psychiatric and psychological impairment. **(c) General damages.** Permanent psychological harm; **(d) Punitive damages** against individual defendants for willful misconduct; **(e) Systemic injunctive relief: (i)** Independent Civil Service Commission; **(ii)** Independent HR/OIG Director; **(iii)** Oversight by retired federal magistrate for five years; **(iv)** Disqualification of SGR and Constangy from Town labor-employment work; **(v)** Annual trauma-informed training for officials and counsel; **(vi)** Semi-annual public posting of HR metrics to include employee climate surveys.

## XIII.    SUMMARY OF RELIEF

| Relief Category | Counts Where Sought | Key Targets / Actions |
|---|---|---|
| **A. Declaratory Judgments** | I, II, III, IV, VI, VII, VIII, IX, X, XI | – First-Amendment violations (speech & petition)<br>– § 1983 conspiracy & Monell liability<br>– ADA accommodation, retaliation, interference, confidentiality<br>– Title VII retaliation<br>– FCRA aiding-and-abetting retaliation<br>– Fla. Const. art I § 5 petition right |
| **B. Injunctive / Structural Relief** | I, II, III, IV, VI, VII, VIII, IX, X, XI, XII, XIII, XVII | **Town of Orange Park** —<br>• First-Amendment training for officials & staff (I)<br>• Disclose all contributors to |

| Relief Category | Counts Where Sought | Key Targets / Actions |
|---|---|---|
| | | future "independent" investigations (III, IV, V)<br>• Segregate ADA medical files; audit access logs (VI, VIII, X)<br>• Adopt ADA interactive-process & anti-retaliation procedures; bi-annual training (VI-VIII)<br>• Protected-reporting procedure under Title VII (IX)<br>• Standardized hiring practices (XIII)<br>• Purge or sequester disclosed medical info; written segregation policy (XIV)<br>**Florida Bar** — non-retaliatory grievance procedures (II, XI)<br>**SGR & Constangy** — barred from labeling work "independent" and from future Town labor-employment contracts (III, V, VIII, XVII)<br>**Systemic Remedies** — Independent Civil Service Commission, HR/OIG, retired-magistrate oversight, trauma-informed training, twice-yearly HR-metrics publication (XVII) |
| **C. Compensatory Damages** | All counts except XI | Back pay, front pay, lost benefits, pension credits, emotional-distress, reputational harm, aggravated PTSD, future mental-health costs. |
| **D. Punitive Damages** | I (Anderson, Taylor, Whitson); III (Whitson, Hodges, Dave, Thakkar, Zabijaka); V (SGR, Constangy, individual partners); VII (Whitson, Hodges, Dave, Thakkar, Zabijaka); VIII (Whitson, Hodges, Dave, Bean, Thakkar, Zabijaka); IX (Whitson, Hodges, Dave, Thakkar, Zabijaka, | Seeks deterrence of willful, malicious, or reckless constitutional and statutory violations. |

| Relief Category | Counts Where Sought | Key Targets / Actions |
|---|---|---|
| | Sandlin); XII (where legally permissible); XIV (Whitson); XVII (all individual defendants). | |
| **E. Joint & Several Liability** | III, V, XII | Conspirators / aiding-and-abetting defendants liable together for entire judgment. |
| **F. Legal Fees & Costs** | I – X (42 U.S.C. §§ 1988, 12205, 2000e-5(k)); XI (state-constitutional equity); XII (Fla. Stat. § 760.11(5)); XIII-XVI (state-tort fee shifting where allowed). | |

# XIV.   CONCLUSION

170.    For the reasons set forth in the foregoing Counts I through XVI—and the integrated facts, authorities, and precedents supporting each—Plaintiff William G. Merryman respectfully requests that the Court: **(a) Enter judgment** in his favor on every count; **(b) Declare** that the acts and omissions of the respective Defendants violated the United States Constitution, the Florida Constitution, the ADA, Title VII, the Florida Civil Rights Act, and Florida common law as pleaded; **(c) Award injunctive and structural relief** needed to restore Plaintiff, prevent recurrence, and bring the Town and its agents into full compliance with federal and state law, including **(i)** training, (ii) record-segregation, **(iii)** policy reform, and **(iv)** independent oversight mechanisms; **(d) Award compensatory damages**—back pay, front pay, lost benefits, emotional-distress, reputational, and future-care costs—jointly and severally where applicable; **(e) Award punitive damages** against those individual and private-entity Defendants whose willful, malicious, or reckless conduct warrants deterrence;

171.    **Impose joint-and-several liability** on conspirators and aiding-and-abetting actors under Counts III, V, and XII;

172.    **Award statutory attorneys' fees and costs** under 42 U.S.C. §§ 1988, 12205, 2000e-5(k), Fla. Stat. § 760.11(5), and any other applicable authority; and

173.    **Grant such further legal or equitable relief** as the Court deems just and proper.

Dated this __th day of _____, 2025.

/s/ William G. Merryman

William Merryman, Pro Se
1117 Buggy Whip Trl
Middleburg, FL, 32068
904-859-9149